UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KELVIN R. HARRIS,

     Plaintiff,

v.                                                    CASE No. 8:10-CV-1768-T-TGW

MICHAEL J. ASTRUE,
Commissioner of Social Security,

     Defendant.

_____

ORDER

     The plaintiff in this case seeks judicial review of the denial of his claims for Social Security disability benefits and supplemental security income payments.[*]  Because the decision of the Commissioner of Social Security is supported by substantial evidence and does not contain reversible error, the decision will be affirmed.

I.

     The plaintiff, who was forty-eight years old at the time of the administrative decision and who has a twelfth grade education with special

_____

[*]The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 19).

classes, has been employed as a plaster and stucco worker (Tr. 36-37, 44, 54). He filed claims for Social Security disability benefits and supplemental security income payments, alleging that he became disabled on November 1, 2005, due to a back injury (Tr. 168). The claims were denied initially and upon reconsideration.

The plaintiff, at his request, then received a de novo hearing before an administrative law judge. The law judge found that the plaintiff had severe impairments of "lumbar spine disorder, cervical spine disorder, right shoulder disorder, borderline intellectual functioning, depression, anxiety, diabetes, vision problems requiring laser surgery, psoriasis, and history of cocaine abuse in reported remission" (Tr. 20). She concluded that, with these impairments, the plaintiff can perform a range of light work with the following restrictions (Tr. 23):

> The claimant may not climb ladders, ropes, or scaffolds. The claimant may occasionally climb ramps and stairs. The claimant may occasionally balance, stoop, kneel, crouch, and crawl. The claimant may occasionally overhead reach with his upper extremities. The claimant should avoid exposure to extreme heat and humidity and exposure to dangerous work hazards and unprotected heights. Due to the claimant's reduced intellectual functioning, medication side effects,

and psoriasis, the claimant is limited to no more
than routine, uncomplicated work. The claimant is
also limited to no more than occasional required
work contact with the public, supervisors, and
co-workers. Due to the claimant's visual disorder,
the claimant is unable to perform fine precision
visual tasks such as required in small parts
assembly work.

The law judge decided that these limitations prevented the plaintiff from

returning to prior employment in plaster and stucco construction (Tr. 27).

However, based upon the testimony of a vocational expert, the law judge

found that there are jobs that exist in significant numbers in the national

economy that the plaintiff can perform such as assembler, hand packager, and

housekeeper (Tr. 29). The law judge therefore ruled that the plaintiff was not

disabled (id.). The Appeals Council, after considering additional evidence

submitted by the plaintiff, let the decision of the law judge stand as the final

decision of the Commissioner (Tr. 1-4).

II.

In order to be entitled to Social Security disability benefits and

supplemental security income, a claimant must be unable "to engage in any

substantial gainful activity by reason of any medically determinable physical

or mental impairment which ... has lasted or can be expected to last for a

continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A),
1382c(a)(3)(A).  A "physical or mental impairment," under the terms of the
Social Security Act, is one "that results from anatomical, physiological, or
psychological abnormalities which are demonstrable by medically acceptable
clinical and laboratory diagnostic techniques."    42 U.S.C. 423(d)(3),
1382c(a)(3)(D). In this case, the plaintiff must show that he became disabled
before his insured status expired on June 30, 2007, in order to receive
disability benefits.  42 U.S.C. 423(c)(1); Demandre v. Califano, 591 F.2d
1088, 1090 (5th Cir. 1979), cert. denied, 444 U.S. 952. There is not a similar
requirement with respect to the plaintiff's claim for supplemental security
income payments.

A determination by the Commissioner that a claimant is not
disabled must be upheld if it is supported by substantial evidence. 42 U.S.C.
405(g). Substantial evidence is "such relevant evidence as a reasonable mind
might accept as adequate to support a conclusion." Richardson v. Perales,
402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305
U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact
made by administrative agencies ... may be reversed ... only when the record

-4-

compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004)(en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

III.

The plaintiff testified that he became disabled on November 1, 2005, due to foot pain, back pain, shoulder problems, neck pain, psoriasis, eye problems, kidney disease, diabetes, and depression (Tr. 38-51) and that he is, as a result, basically in his bed watching TV (Tr. 42). The law judge found that this testimony was not credible to some extent and that the plaintiff could perform a range of light work (Tr. 23-27). Based upon testimony from a vocational expert, the law judge found that there were jobs in the national economy that the plaintiff could perform despite his limitations and, consequently, she determined that the plaintiff was not disabled. Further, although additional medical records were submitted to, and considered by, the Appeals Council, it found that the additional information did not provide a basis for changing the law judge's decision (see Tr. 1-4).

The plaintiff challenges the law judge's determination with regard to the plaintiff's credibility and the Appeals Council's decision to deny review. The plaintiff does not challenge the law judge's findings regarding the plaintiff's mental condition. In light of the scheduling Order (Doc. 18, p. 2), any such challenge is deemed waived. With respect to the contentions

relating to the plaintiff's credibility and the Appeals Council's decision, neither warrants a reversal.

The plaintiff contends first that the law judge did not apply the Eleventh Circuit's pain standard in evaluating the credibility of his testimony. At the hearing, the plaintiff stated that his back and shoulder pain cause him to stay in bed all day and prevent him from sitting or standing for more than thirty minutes; walking for more than a block or two without resting; walking five blocks without stopping, sitting, or leaning; lifting more than five pounds with his right arm and ten pounds with both arms; and lifting his right arm over his head or reaching forward to grasp (Doc. 21, p. 8; Tr. 38-51). The law judge acknowledged the plaintiff's testimony in her decision (Tr. 24), but did not find it fully credible (Tr. 24-27).

The Eleventh Circuit has articulated a standard for assessing allegations of pain and other subjective complaints.   As the court of appeals explained in  Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986), the pain standard "required evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical

-7-

condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." If the law judge concludes that there is an objectively determined medical condition which could reasonably be expected to produce disabling pain, the law judge "must evaluate the credibility of claimant's testimony as to pain, and must express a reasonable basis for rejecting such testimony." Hand v. Heckler, 761 F.2d 1545, 1549 n.6 (11th Cir. 1985).

The plaintiff seems to suggest that there is no indication that the law judge applied the Eleventh Circuit's pain standard because she did not cite to Landry. There is no authority for the suggestion that the law judge must specifically refer to Landry in her decision. Moreover, the law judge's decision set forth the pain standard, and cited to the pertinent regulations and Social Security Rulings governing the assessment of subjective complaints of pain (Tr. 23). See Wilson v. Barnhart, 284 F.3d 1219, 1225-26 (11th Cir. 2002). Further, the law judge appropriately applied that standard (Tr. 27):

> [T]he claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

The law judge, in addition, provided adequate reasons for her credibility determination. Thus, she concluded that the medical evidence was inconsistent with the plaintiff's allegations of disabling pain and functional limitations.

In this respect, she stated that "the record documents lumbar and cervical problems, but all the medical evidence of record does not show that the claimant is unable to perform light duty work, and [she] notes that the claimant's past relevant work was much more strenuous than the limitations that the claimant is found to be capable of performing" (Tr. 25). Prior to making this statement, the law judge had acknowledged lumbar abnormalities shown on an MRI, including a left L4-5 disc herniation impinging the proximal left L5 nerve root (id.).

In concluding that the plaintiff's lumbar and cervical impairments did not preclude light work, the law judge also considered the report of Dr. Jack Lipps, who had conducted a consultative examination (see Tr. 240-46). The law judge specifically noted Dr. Lipps's observation that the plaintiff "navigated the office and parking lot ... without difficulty at a rapid pace and normal gait" (Tr. 241; see Tr. 25). While Dr. Lipps's report

-9-

included findings of spasm of paravertebral lumbar muscles and some limitation in lumbar extension and lateral flexion, the findings were, for the most part, normal, including no limitation in forward flexion (Tr. 240-46). The report did not reflect incapacitating functional limitations. Moreover, according to Dr. Lipps, the plaintiff's "prognosis is good" (Tr. 243).

The law judge also specifically addressed the plaintiff's complaints of neck pain and right shoulder problems (Tr. 25-26). After referring to the objective findings concerning those problems, the law judge stated (Tr. 26):

> Electromagnetic radiation (X-RAYS) of the claimant's cervical spine were also taken on the same day and showed mild degenerative changes (Exhibit B12F/4). The undersigned notes in regards to the claimant's shoulder issue, tendonitis, and tear in his right shoulder, are currently being treated with injections with good relief. However, giving the claimant the benefit of the doubt, the undersigned notes that the residual functional capacity delineated above takes in account these issues with reduced overhead reaching. The undersigned does note that the claimant stated that he could not lift more than five pounds with his right shoulder, but the medical record does not document this substantial limitation, nor has a treating physician given this restriction.

Importantly, the plaintiff makes no attempt to show that the evidence before

the law judge, which was somewhat sparse, compels a contrary conclusion.

Adefemi v. Ashcroft, supra.

In addition to evaluating the plaintiff's subjective complaints in

light of the medical evidence, the law judge also found inconsistencies in the

record that reflected negatively on the plaintiff's credibility (Tr. 24). She

explained that finding as follows (id.):

> At the hearing, the claimant testified that he has
> vision problems that require laser surgery, but then
> stated that he is able to read and able to watch
> television all day. A consultative exam showed
> that the claimant's vision was 20/25 without
> glasses and his color vision was normal (Exhibit
> B2F). Additionally, he further testified that he
> leaves home three times a week and goes to the
> beach. Furthermore, the undersigned notes that the
> claimant has child support issues and has asked for
> a doctor statement to state that he is disabled in
> order to avoid his child support obligations
> (Exhibit B14F/11).
>
> The undersigned also notes that the record does not
> contain a disability statement or a treating
> physician statement indicating that the claimant is
> unable to sustain reduced work tasks. The claimant
> testified that he cannot drive because he lost his
> license due to failure to pay child support. He
> further stated that his daughter, who is six, is the

-11-

reason that he keeps him [sic] going and is also the reason he quit using cocaine when she was four years old. However, he testified that the last time he saw his daughter was one year ago. Furthermore, he stated that he has friends with whom he socializes with regularly and goes to the beach by either walking ten minutes or getting a ride from his friends. Therefore, the claimant should have access to rides to visit his daughter. The claimant's mother, whom he lives with, does all of his activities of daily living, such as shopping and cooking. The undersigned notes that all of these inconsistencies show that the claimant's allegations are not as severe as he alleges and reflects negatively on his credibility.

The plaintiff attempts to chip away at those reasons. However, his attempts are unpersuasive.

The plaintiff contends that the law judge improperly focused on his testimony about his need for laser eye surgery. The plaintiff asserts that his testimony regarding vision problems amounted merely to "a somewhat scattered reference about someone referring him to an eye doctor" (Doc. 21, p. 12). However, the plaintiff specifically told the law judge that he was looking for an eye doctor to do "like a kind of laser surgery" for his right eye (Tr. 49). Thus, the plaintiff was clearly claiming that he had a vision problem that needed laser surgery.

-12-

The law judge discounted this claim, stating that "the claimant testified that he has vision problems that require laser surgery, but then stated that he is able to read and able to watch television all day. A consultative exam showed that the claimant's vision was 20/25 without glasses and his color vision was normal" (Tr. 24). Under these circumstances, the law judge could reasonably conclude, in light of an exaggeration about an eye impairment, that the plaintiff was not entirely credible.

The plaintiff asserts that he did have an eye problem because he was diagnosed with a retinal defect and was referred to a specialist for a "hole in retina" (Doc. 21, p. 12). The Commissioner correctly responds that the plaintiff has not shown that his vision problems affected his ability to work.

Further, the plaintiff does not point to any evidence that he suffers any limitations from his retinal defect. Notably, the law judge restricted the plaintiff from performing fine precision visual tasks due to his eye problems. Accordingly, it was reasonable for the law judge to conclude that the plaintiff's allegation of vision problems, in view of his daily activities and examination findings, detracted from his credibility.

The plaintiff also challenges the law judge's comment that the claimant "has child support issues and has asked for a doctor statement to relate that he is disabled in order to avoid his child support obligations" (id., p. 10). Thus, on November 12, 2008, the plaintiff presented to Nora Koziel, A.R.N.P., requesting a letter stating he cannot work due to chronic back pain "so he is not in contempt for his child support" (Tr. 338-39).

The law judge is entitled to consider the plaintiff's motivation in seeking disability benefits. Here, the law judge could reasonably think that a finding of disability would not only provide secondary gain in the form of benefits, but could also help the plaintiff stay out of jail. While this reason was not compelling, it was just one of the valid reasons stated by the law judge in discounting the plaintiff's subjective complaints.

The plaintiff also asserts that the law judge "improperly focused on Plaintiff's relationship with his young daughter, whom he testified he had not seen in over one year because he lost his drivers' license due to the child support situation and the discomfort to make the two-hour car ride to see her" (Doc. 21, p. 11). The law judge, in discussing this evidence, merely commented that the plaintiff's testimony about the inspiring role his daughter

-14-

plays in his life conflicts with his testimony that he is unable to secure a ride to see her.

The law judge could reasonably think, under the circumstances, that the plaintiff was exaggerating his concern for his daughter (who apparently is only one of three children (Tr. 270)), in order to paint a sympathetic picture of himself. Such an exaggeration has a bearing on the plaintiff's overall credibility. Accordingly, the law judge could legitimately consider that factor.

The plaintiff also challenges the law judge's noting "that the record contained no disability or treating physician statements indicating that Plaintiff was unable to sustain reduced work tasks" (Doc. 21, pp. 12-13). He argues, citing Lamb v. Bowen, supra, 847 F.2d at 703, that no inference can be drawn from silence. However, since the plaintiff has the burden to demonstrate that he is disabled, the absence of any supporting statement from a treating physician is noteworthy. Its significance is heightened in light of the current common practice by Social Security representatives to send forms listing functional limitations to treating doctors to be filled out.

Moreover, the lack of a treating doctor's opinion takes on even more importance in this case in view of the opinion in the record of a nonexamining reviewing physician (Tr. 259-66). In the absence of a treating doctor's opinion, the law judge could properly give significant weight to the opinion of the reviewing doctor, as she did (Tr. 25). Milner v. Barnhart, 275 Fed. Appx. 947 (11th Cir. 2008). Consequently, the law judge reasonably could take into account the lack of any opinions from treating physicians.

The plaintiff also argues that the law judge should have considered, in assessing credibility, the fact that the plaintiff consistently sought treatment for his pain. However, as indicated, the medical evidence is somewhat sparse. Accordingly, the law judge could have reasonably thought that the plaintiff did not seek treatment that was consistent with his allegation that he suffered pain at a level of 9-10 on a scale of 10.

Notably, the law judge did not totally reject the plaintiff's allegations of pain. Rather, she found that the plaintiff has severe impairments that cause pain and limit him to a reduced range of light work. However, she rejected the allegations that he suffers totally debilitating pain and limitations. This determination, which is in accord with the Eleventh

-16-

Circuit's pain standard, is reasonable and supported by substantial evidence. Therefore, this court is not authorized to overturn that determination. See Celebrezze v. O'Brient, supra.

As a second issue, the plaintiff argues that the Appeals Council "erred when it declined to review the ALJ's decision upon receipt of new evidence containing several treating source opinions indicating that plaintiff has serious functional limitations and is unable to work" (Doc. 21, p. 14). This contention does not support reversal.

The Eleventh Circuit sought to clarify in Ingram v. Commissioner of Social Security Administration, 496 F.3d 1253 (11th Cir. 2007). the law concerning the nature and extent of judicial review of new evidence that was first presented to the Appeals Council. In my view, Ingram held that, when the Appeals Council considers new evidence and denies review, the district court should determine whether the Appeals Council has correctly decided that the law judge's findings are not contrary to the weight of all the evidence. See Tucker v. Astrue, 2008 WL 2811170 (M.D. Fla. 2008).

The record indicates that the plaintiff visited Dr. Glenn S. Fuoco, an orthopedic physician, on August 29, 2007 (Tr. 325), and October 10, 2007 (Tr. 323). The plaintiff was also treated by internist Dr. Rajan Naik and nurse practitioner Koziel during the relevant period. Apparently recognizing that the law judge relied on the lack of treating physician statements in making his functional capacity determination, the plaintiff submitted evidence to the Appeals Council from Dr. Fuoco, Dr. Naik, and Koziel in an attempt show the plaintiff could not perform light or sedentary work (Doc. 21, p. 14). Thus, Dr. Fuoco's signature appears on a prescription pad paper dated August 29, 2007, on which is written, "No work for now due to lumbar disc herniation" (Tr. 134). Approximately six weeks later, Dr. Fuoco issued a second prescription pad statement: "Mr. Harris has had two prior lumbar surgeries [and] has a recurrent disc herniation. He currently is unable to work" (id.). Moreover, nurse practitioner Koziel, who worked for Dr. Naik, wrote on a prescription pad, dated October 12, 2007, "Patient unable to sit for more than 30 minutes due to medical problems. Please excuse him from jury duty" (id.). Finally, in November 2009, Dr. Naik, also writing on a prescription pad,

stated that the plaintiff, due to back pain and right shoulder pain, is "unable to do work secondary to pain" (Tr. 345).

Opinions from treating physicians should be given substantial or considerable weight unless there is good cause for not giving them such weight. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004). Good cause exists when the treating physician's opinion is not bolstered by the evidence, the evidence supports a contrary finding, or when the opinion is conclusory or inconsistent with the physician's own medical records. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

Citing Ingram v. Commissioner of Social Security, supra, the plaintiff contends that "the Appeals Council erred by failing to review the ALJ's decision in light of the new evidence submitted by Plaintiff's counsel" (Doc. 21, pp. 14-19). In its notice denying review, the Appeals Council expressly stated that it considered the additional evidence. Importantly, it said further that "[w]e found that this information does not provide a basis for changing the Administrative Law Judge's decision" (Tr. 2). The Appeals Council was not required to give any greater explanation. Mansfield v. Astrue, 395 Fed. Appx. 528, 530 (11th Cir. 2010).

Moreover, the Appeals Council had ample basis to discount these opinions. In the first place, the conclusory nature of these opinions is enough. by itself, to justify the law judge to discount them. Johns v. Bowen, 821 F.2d 551, 555 (11ᵗʰ Cir. 1987); Lanier v. Commissioner of Social Security, 252 Fed. Appx. 311, 313 (11ᵗʰ Cir. 2007). None of the medical experts provide any meaningful explanation for the opinion that the plaintiff was unable to work. Furthermore, Dr. Fuoco's opinions that the plaintiff was "currently unable to work" and "no work for now," and Dr. Naik's opinion that the plaintiff was "unable to do work," are not even medical opinions, but rather opinions on a vocational issue reserved to the Commissioner. 20 C.F.R. 404.1527(e)(1), 416.927(e)(1), 404.1527(e)(3), 416.927(e)(3). Also, Dr. Naik's opinion appears to relate only to the plaintiff's condition as of the date of the November 2009 note, which was provided months after the law judge's decision. Finally, Koziel's opinion, to the extent it relates to the relevant time period, was made by a nurse practitioner who is not recognized as an acceptable medical source for evidence to establish an impairment. 20 C.F.R. 404.1513(a), 416.913(a). Accordingly, the Appeals Council has

correctly decided that the new evidence does not render the law judge's findings contrary to the weight of all the evidence.

It is noted that the plaintiff submitted additional forms filled out by nurse practitioner Koziel to the Appeals Council in support of his disability claim, although the plaintiff did not specifically refer to them in his memorandum. Thus, he filed with the Appeals Council an "Application for Disabled Person Parking Permit Placard," dated November 30, 2007, which stated that he had a severe limitation in his ability to walk, and which was signed by nurse practitioner Koziel (Tr. 130). Moreover, Koziel also filled out three forms dated March 31, 2008, September 24, 2008, and November 12, 2008, entitled "Disability Evaluation Relative to Employment" (Tr. 131-33). On each form Koziel indicated that the plaintiff was disabled for a period of at least three months (id.). In addition to being conclusory and an issue reserved to the Commissioner, as an opinion of a nurse practitioner they could be disregarded by the law judge. 20 C.F.R. 404.1513(a), 416.913(a). Accordingly, the Appeals Council did not err in concluding that the new records did not render the law judge's decision contrary to the weight of all the evidence.

An item in the new evidence, in fact, contains an inconsistency that further supports the law judge's credibility determination. The plaintiff testified that he spends most of the day in bed, only leaves the house about three times per week, and that he can only ride comfortably in a car for one hour (Tr. 42-43, 48). However, on the application for a disabled parking permit, the plaintiff marked that he is "a frequent traveler" (Tr. 130). These inconsistencies raise additional doubt about the plaintiff's credibility.

Furthermore, in assessing whether the Appeals Council correctly decided that the law judge's findings are not contrary to the weight of all the evidence, it is significant that the record includes testimony from the vocational expert that, even if the plaintiff were limited to sedentary work, there were specific types of jobs in the national economy that the plaintiff could perform (Tr. 56-57). Consequently, in light of this evidence in the record, in order to demonstrate that the Appeals Council's decision that the law judge's finding of not disabled was contrary to the weight of all the evidence, the plaintiff must show not just that he could not perform the range of light work set forth in the residual functional capacity determination, but that he could not even perform sedentary work with the same additional

functional limitations.  The Appeals Council properly concluded that the totality of the evidence does not warrant such a finding.  The Appeals Council therefore correctly denied review.

It is, therefore, upon consideration

ORDERED:

That the decision of the Commissioner of Social Security is hereby **AFFIRMED**.  The Clerk shall enter judgment in accordance with this Order and **CLOSE** this case.

DONE and ORDERED at Tampa, Florida, this 3ʳᵈ day of November, 2011.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE